# EXHIBIT A

IN THE SUPERIOR COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

**REIDEL GARCIA**
1479 Key Parkway
Apartment A2
Frederick, Maryland 21702

**ALEXIS ALVARADO**
1479 Key Parkway
Apartment A2
Frederick, Maryland 21702

**YERLI URBINA**
8410 Adelphi Road
Hyattsville, Maryland 20783

**ROBERTO ALVELO**
8410 Adelphi Road
Hyattsville, Maryland 20783

**HENRY PALMA,**
8410 Adelphi Road
Hyattsville, Maryland 20783

and

**EDIL PALMA**
8410 Adelphi Road
Hyattsville, Maryland 20783

       **Plaintiffs**

v.

**ROBERTO FLORES**
40 Ward Avenue
Westminster, Maryland 21158

and

**IGLOO HVAC, LLC**
40 Ward Avenue
Westminster, Maryland 21158

       **Defendants.**

Civ. No. **14 - 0004458**

Jury Demand

**COMPLAINT**

RECEIVED
Civil Clerk's Office
JUL 18 2014
Superior Court of the
District of Columbia
Washington, D.C.

## COMPLAINT

1.      Plaintiffs Reidel Garcia, Alexis Alvarado, Yerli Urbina, Roberto Alvelo, Henry Palma and Edil Palma bring this action against their former employer, Igloo HVAC, LLC ("Igloo" or "Company"), and Igloo owner Roberto Flores, seeking all available relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the D.C. Minimum Wage Revision Act, D.C. Code § 32-1001 *et seq.*, the D.C. Wage Payment and Wage Collection Act, D.C. Code § 32-1301 *et seq.*, the D.C. Wage Theft Prevention Act of 2013, B20-0199 (codified in scattered sections of the D.C. Wage Payment Act, D.C. Code § 32-1301 *et seq.*), the D.C. Uniform Commercial Code and D.C. common law.

### Jurisdiction and Venue

2.      This Court has jurisdiction over this Complaint pursuant to D.C. Code §§ 11-921, 13-423 and 29 U.S.C. § 216(b).

3.      This Court has personal jurisdiction over Defendants Igloo and Flores pursuant to D.C. Code § 13-423(a)(1) and (2).

4.      The acts alleged in this Complaint arose in the District of Columbia, therefore, venue is proper.

5.      Plaintiffs seek damages in excess of $5,000.00.

### The Parties

6.      Plaintiffs Reidel Garcia, Alexis Alvarado, Yerli Urbina, Roberto Alvelo, Henry Palma and Edil Palma were hourly non-exempt employees of Defendants Igloo and Flores.

7.      Defendant Igloo is a Maryland company engaged in the business of installing and servicing heating, ventilation, and air conditioning ("HVAC") equipment in commercial and residential buildings throughout the District of Columbia and Maryland.

2

8.     Defendant Flores is the sole member and resident agent of Igloo.  Flores employed the Plaintiffs and is personally responsible for the unlawful acts alleged in this complaint.

9.     Defendant Flores registered the Defendant Company with the Maryland Department of Assessments and Taxation on October 17, 2012.  The Company was originally named Hot & Cold Heating & Cooling Systems, LLC, and on November 28, 2012, Defendant Flores amended the Company's Articles of Incorporation, changing the name to Igloo HVAC, LLC.

10.     Defendant Igloo's principal office is located at 40 Ward Avenue, Westminster, Maryland 21158.

### General Allegations

11.     In mid-2011, developer 2 M Street Redevelopment, LLC – a joint venture of William C. Smith & Co. and the Warrenton Group – began construction work on 2M Street, a mixed income housing project with 314 apartment units (93 affordable units and 221 market rate) and 4,100 square feet of ground floor retail.  The project is located at 2 M Street, N.E., Washington, D.C. 20002, and is expected to be completed in 2014.

12.     The 2M Street project is funded, in part, by a $17 million grant from the District of Columbia's Housing Production Trust Fund ("HPTF").  HPTF, which is administered by D.C.'s Department of Housing and Community Development, provides loans and grants to both nonprofit and for-profit developers of affordable housing in the District of Columbia.

13.     The 2M Street developer also secured mortgage insurance from the U.S. Department of Housing and Urban Development ("HUD"), pursuant to Section 221(d)(4) of the National Housing Act ("NHA"), 12 U.S.C. § 1715l(d)(4).  The insurance is valued at approximately $62 million.  HUD's Section 221(d)(4) mortgage insurance program insures mortgage loans to

facilitate the new construction or substantial rehabilitation of multifamily housing for moderate-income families, elderly, and the handicapped.

14.     Section 212 of the NHA, 12 U.S.C. §1715c, provides that HUD may not provide mortgage insurance under Section 221(d)(4), unless the project's general contractor certifies that specific categories of workers, i.e., laborers and mechanics, employed on that project have been paid prevailing wages in accordance with the Davis-Bacon Act ("DBA"), 40 U.S.C. § 3141 *et seq*.

15.     The DBA is a minimum wage law designed for the benefit of construction workers that seeks to ensure that laborers and mechanics engaged in the construction of public works receive locally prevailing wage rates and fringe benefits. To this end, the Act's labor standards must be incorporated in each contract awarded by the Federal Government or the District of Columbia in excess of $2,000 for the construction, alteration, or repair of public buildings or public works. 40 U.S.C. §3142(a).  Section 212 of the NHA extends the DBA's requirements to those projects insured by HUD pursuant to Section 221(d)(4) of the NHA.

16.     According to the U.S. Department of Labor, which administers the DBA, the prevailing wage rate for Sheet Metal Workers on the 2M Street project was $37.09 per hour, and the cash equivalent of the prevailing fringe benefits was $13.61 per hour.

17.     Defendant Igloo received a subcontract to install HVAC systems in the 2M Street building.  On information and belief, this subcontract included a provision applying the DBA's requirements to the work performed by Igloo, as required by 40 U.S.C. § 3142(a)-(c).

18.     Between mid and late-2013, Defendant Flores, acting for Defendant Igloo, hired the Plaintiffs to install HVAC equipment, i.e., to perform sheet metal work, in the newly-erected 2M Street building.

4

## Facts Pertaining to Plaintiff Reidel Garcia

19.     In or about October 2013, Defendant Flores, acting for Igloo, hired Plaintiff Reidel Garcia to install HVAC equipment in the new 2M building.

20.     Defendants paid Garcia at the rate of $27.35 per hour.

21.     Plaintiff Garcia received weekly or bi-weekly paychecks from Defendant Igloo (under either its previous name of Hot & Cold Heating & Cooling System or Igloo's name).

22.     Defendants required Plaintiff Garcia to work a 57-hour workweek.  Monday through Friday he worked from 7 a.m. to 5 p.m., and on Saturdays he worked from 7 a.m. to 2 p.m.

23.     Defendants did not pay Garcia the $50.70 per hour prevailing wage and fringe benefit rate for his work on the 2M Street project as required by the DBA and NHA.

24.     Defendants did not pay Garcia overtime pay for hours worked in excess of 40 per week.

25.     Defendants required Plaintiff Garcia to work on Saturdays, and if he was unable to work, Defendant Flores required Garcia to pay him $150.00 for the missed shift.  Plaintiff Garcia was unable to work four Saturdays, and paid Defendant Flores a total of $600.00 for the missed shifts.

26.     As a condition of employment, Defendant Flores required that, for each pay period, Garcia kick back $150.00 of his earnings to Flores.

27.     Defendants directed Plaintiffs Garcia and Alvarado to install sixteen HVAC condensers on the 2M Street project, in addition to their other work on the project.  Defendant Flores agreed to pay Plaintiffs Garcia and Alvarado $50.00 per machine.  Defendants failed and refused to pay Plaintiffs Garcia and Alvarado for some or all of this work.

28.     In or about April 2014, Garcia quit his employment with Defendant Igloo because Defendants had failed to pay him for four pay periods.

5

29.     In or about April 2014, Plaintiffs Garcia and Alvarado approached representatives of the Sheet Metal, Air, Rail and Transportation Workers, Local 100 – a local labor union headquartered in Suitland, Maryland – to discuss Defendant Flores' nonpayment of wages.

30.     On or about April 21, 2014, Defendant Flores called Garcia on his cellular phone, and informed him that he knew that Garcia had approached representatives of Local 100. Defendant Flores threatened Plaintiff Garcia.  Later that day, Defendant Flores arrived at Garcia's residence and gave him two of the four paychecks that Defendants owed him.

31.     Defendants owe Plaintiff Garcia his last two paychecks for his work on the 2M Street project.  In addition, Plaintiff Garcia has yet to receive full payment from the Defendants for the installation of the condenser units.

### Facts Pertaining to Plaintiff Alexis Alvarado

32.     In or about December 2013, Defendant Flores, acting for Igloo, hired Plaintiff Alexis Alvarado to install HVAC equipment in the new 2M Street building.

33.     Defendants paid Alvarado at the rate of $50.70 per hour.

34.     Plaintiff Alvarado received weekly or bi-weekly paychecks from Defendant Igloo (under either its previous name of Hot & Cold Heating & Cooling System or Igloo's name).

35.     Defendants required Plaintiff Alvarado to work a 57-hour workweek.  Monday through Friday he worked from 7 a.m. to 5 p.m., and on Saturdays he worked from 7 a.m. to 2 p.m.

36.     Defendants did not pay Alvarado overtime pay for hours worked in excess of 40 per week.

37.     Defendants required Plaintiff Alvarado to work on Saturdays, and if he was unable to work, Defendant Flores required Alvarado to pay him $141.00 for the missed shift.

38.     As a condition of employment, Defendant Flores required that, for each pay period, Alvarado kick back $628.00 of his earnings to Flores. Defendants did not therefore pay Alvarado the prevailing wage and fringe benefit rate for his work on the 2M Street building as required by the DBA and NHA. Although Plaintiff Alvarado's hourly rate of $50.70 for his work on the 2M Street building appeared consistent with the DBA prevailing wage and fringe benefit rate for the project, he did not receive the locally prevailing rate because he was required to return a portion of his earnings to Defendant Flores.

39.     Defendants directed Plaintiffs Garcia and Alvarado to install sixteen HVAC condenser units on the 2M Street project, in addition to their other work on the project. Defendants agreed to pay Plaintiffs Garcia and Alvarado $50.00 per machine. Defendants failed and refused to pay Plaintiffs Garcia and Alvarado for some or all of this work.

40.     In or about April 2014, Alvarado quit his employment with Defendant Igloo after Defendants failed to pay him $400.00 for installing eight condenser units in the 2M building.

41.     Plaintiff Alvarado has yet to receive full payment from the Defendants for the installation of the condenser units.

### Facts Pertaining to Plaintiff Yerli Urbina

42.     In or about August 2013, Defendant Flores, acting for Igloo, hired Plaintiff Yerli Urbina to install HVAC equipment in the new 2M building.

43.     Defendants paid Urbina at the rate of $50.70 per hour.

44.     Plaintiff Urbina received weekly or bi-weekly paychecks from Defendant Igloo (under either its previous name of Hot & Cold Heating & Cooling System or Igloo's name).

45.     Defendants required Plaintiff Urbina to work a 57-hour workweek. Monday through Friday he worked from 7 a.m. to 5 p.m., and on Saturdays he worked from 7 a.m. to 2 p.m.

7

46.     Defendants did not pay Urbina overtime pay for hours worked in excess of 40 per week.

47.      Defendants required Plaintiff Urbina to work on Saturdays, and if he was unable to work, Flores required Urbina to pay him $200.00 to $300.00 for the missed shift.

48.     As a condition of employment, Defendant Flores required that, for each pay period, Urbina kick back $628.00 of his earnings to Flores.

49.     On payday, Defendant Flores would typically park his car near a bank or check cashing store and call Plaintiff Roberto Alvelo on his cellular phone, informing Alvelo of his location. Plaintiffs Alvelo, Urbina, Henry Palma and Edil Palma would then drive together to meet Defendant Flores and retrieve their paychecks. These plaintiffs were then required immediately to cash their checks at the nearby bank or check cashing store and pay Defendant Flores the required kickback.

50.     Defendants did not therefore pay Urbina the prevailing wage and fringe benefit rate for his work on the 2M Street building as required by the DBA and NHA. Although Plaintiff Urbina's hourly rate of $50.70 for his work on the 2M Street building appeared consistent with the DBA prevailing wage and fringe benefit rate for the project, he did not receive the locally prevailing rate because he was required to return a portion of his earnings to Defendant Flores.

51.     In or about February 2014, Urbina quit his employment with Defendant Igloo after Defendant Flores failed to pay him for two pay periods.

52.     Plaintiff Urbina has yet to receive the two paychecks Defendant Flores owes him for his work at the 2M building.

## Facts Pertaining to Plaintiff Roberto Alvelo

53.     In or about November 2013, Defendant Flores, acting for Igloo, hired Plaintiff Roberto Alvelo to install HVAC equipment in the new 2M building.

8

54.     Defendants paid Alvelo at the rate of $50.70 per hour.

55.     Plaintiff Alvelo received weekly or bi-weekly paychecks from Defendant Igloo (under either its previous name of Hot & Cold Heating & Cooling System or Igloo's name).

56.     Defendants required Plaintiff Alvelo to work a 57-hour workweek.  Monday through Friday he worked from 7 a.m. to 5 p.m., and on Saturdays he worked from 7 a.m. to 2 p.m.

57.     Defendants did not pay Alvelo overtime pay for hours worked in excess of 40 per week.

58.     Defendants required Plaintiff Alvelo to work on Saturdays, and if he was unable to work, Flores required Alvelo to pay him $140.00 for the missed shift.

59.     As a condition of employment, Defendant Flores required that, for each pay period, Alvelo kick back $400.00 of his earnings to Flores.

60.     On payday, Defendant Flores would typically park his car near a bank or check cashing store and call Plaintiff Roberto Alvelo on his cellular phone, informing Alvelo of his location. Plaintiffs Alvelo, Urbina, Henry Palma and Edil Palma would then drive together to meet Defendant Flores and retrieve their paychecks.  These plaintiffs were then required immediately to cash their checks at the nearby bank or check cashing store and pay Defendant Flores the kickbacks he required.

61.     Defendants did not therefore pay Alvelo the prevailing wage and fringe benefit rate for his work on the 2M Street building as required by the DBA and NHA.  Although Plaintiff Alvelo's hourly rate of $50.70 for his work on the 2M Street building appeared consistent with the DBA prevailing wage and fringe benefit rate for the project, he did not receive the locally prevailing rate because he was required to return a portion of his earnings to Defendant Flores.

62.    In or about November 2013, Alvelo attempted to deposit a paycheck from Defendant Igloo in the amount of $1,522.40. The bank refused to honor his check because there were not sufficient funds available in the account on which the instrument was drawn.

63.    In or about January 2014, Alvelo quit his employment with Defendant Igloo, in part, because Defendant Flores refused to replace the check that had bounced.

64.    Defendant Flores has refused to issue Plaintiff Alvelo a replacement paycheck for the check that bounced.

### Facts Pertaining to Plaintiff Henry Palma

65.    In or about August 2013, Defendant Flores, acting for Igloo, hired Plaintiff Henry Palma to install HVAC equipment in the new 2M building.

66.    Defendants paid Henry Palma at the rate of $50.70 per hour.

67.    Plaintiff Henry Palma received weekly or bi-weekly paychecks from Defendant Igloo (under either its previous name of Hot & Cold Heating & Cooling System or Igloo's name).

68.    Defendants required Plaintiff Palma to work a 57-hour workweek. Monday through Friday he worked from 7 a.m. to 5 p.m., and on Saturdays he worked from 7 a.m. to 2 p.m.

69.    Defendants did not pay Henry Palma overtime pay for hours worked in excess of 40 per week.

70.    Defendants required Plaintiff Henry Palma to work on Saturdays, and if he was unable to work, Flores required him to pay him $150.00 for the missed shift. Plaintiff Henry Palma was unable to work three Saturdays, and paid Defendant Flores a total of $450.00 for the missed shifts.

71.    As a condition of employment, Defendant Flores required that, for each pay period, Henry Palma kick back $528.00 of his earnings to Flores.

10

72.     On payday, Defendant Flores would typically park his car near a bank or check cashing store and call Plaintiff Roberto Alvelo on his cellular phone, informing Alvelo of his location. Plaintiffs Alvelo, Urbina, Henry Palma and, Henry's brother, Edil Palma, would then drive together to meet Defendant Flores and retrieve their paychecks.  These plaintiffs were then required immediately to cash their checks at the nearby bank or check cashing store and pay Defendant Flores the required kickback.

73.  .  Defendants did not therefore pay Henry Palma the prevailing wage and fringe benefit rate for his work on the 2M Street building as required by the DBA and NHA.  Although Plaintiff Henry Palma's hourly rate of $50.70 for his work on the 2M Street building appeared consistent with the DBA prevailing wage and fringe benefit rate for the project, he did not receive the locally prevailing rate because he was required to return a portion of his earnings to Defendant Flores.

74.     In or about January 2014, Henry Palma quit his employment with Defendant Igloo because Defendant Flores was going to transfer him to another Igloo project with even less favorable terms and conditions of employment.  Specifically, for the upcoming project, Defendant Flores planned to pay Igloo employees $400.00 per apartment unit, instead of paying them by the hour.

**Facts Pertaining to Plaintiff Edil Palma**

75.     In or about August 2013, Defendant Flores hired Plaintiff Henry Palma's brother, Edil Palma, to install HVAC equipment in the new 2M building.

76.     Defendants paid Edil Palma at the rate of $50.70 per hour.

77.     Plaintiff Edil Palma received weekly or bi-weekly paychecks from Defendant Igloo (under either its previous name of Hot & Cold Heating & Cooling System or Igloo's name).

11

78.     Defendants required Plaintiff Edil Palma to work a 57-hour workweek.  Monday through Friday he worked from 7 a.m. to 5 p.m., and on Saturdays he worked from 7 a.m. to 2 p.m.

79.     Defendants did not pay Edil Palma overtime pay for hours worked in excess of 40 per week.

80.     Defendants required Plaintiff Edil Palma to work on Saturdays, and if he was unable to work, Flores required Edil Palma to pay him $150.00 for the missed shift.

81.     As a condition of employment, Defendant Flores required that, for each pay period, Edil Palma kick back $628.00 of his earnings to Flores.

82.     On payday, Defendant Flores would typically park his car near a bank or check cashing store and call Plaintiff Roberto Alvelo on his cellular phone, informing Alvelo of his location. Plaintiffs Roberto Alvelo, Yerli Urbina, Henry Palma and Edil Palma would then drive together to meet Defendant Flores and retrieve their paychecks.  These plaintiffs were then required immediately to cash their checks at the nearby bank or check cashing store and pay Defendant Flores the required kickback.

83.     Defendants did not therefore pay Edil Palma the prevailing wage and fringe benefit rate for his work on the 2M Street building as required by the DBA and NHA.  Although Plaintiff Edil Palma's hourly rate of $50.70 for his work on the 2M Street building appeared consistent with the DBA prevailing wage and fringe benefit rate for the project, he did not receive the locally prevailing rate because he was required to return a portion of his earnings to Defendant Flores.

84.     In or about January 2014, Palma quit his employment with Defendant Igloo because Defendant Flores was going to transfer Edil Palma to another project with even less favorable

terms and conditions of employment.  Specifically, for the upcoming project, Defendant Flores

planned to pay Igloo employees $400.00 per apartment unit, instead of paying them by the hour.

### Count I – Fair Labor Standards Act
(Plaintiffs Reidel Garcia, Alexis Alvarado, Yerli Urbina, Roberto Alvelo,
Henry Palma and Edil Palma)

85.     Plaintiffs reallege and incorporate herein as if fully restated, the allegations contained in

paragraphs 1-84.

86.     Defendants regularly engage in commerce within the meaning of Section 3(b) of the

FLSA, 29 U.S.C. § 203(b), and their employees handle and use goods that have moved in

interstate commerce.

87.     Defendants were and are employers within the meaning of the FLSA, 29 U.S.C. § 203(d),

and are subject to the provisions of the FLSA.

88.     Plaintiffs Garcia, Alvarado, Urbina, Alvelo, Henry Palma and Edil Palma at all relevant

times were hourly non-exempt employees of Defendants within the meaning of the FLSA, 29

U.S.C. §§ 203(e) and (g) and 207.

89.     At all times relevant, Defendants Igloo and Flores have knowingly and willfully violated

the provisions of Section 7(a) of the FLSA, 29 U.S.C. § 207(a), by employing Plaintiffs for

workweeks longer than 40 hours without compensating them for their employment in excess of

40 hours at rates not less than one and one-half times the regular rates at which they were

employed.

90.     Specifically, throughout their employment with Defendant Igloo, all six Plaintiffs were

required to work 57-hours per week, and Defendants never paid Plaintiffs overtime pay for hours

worked in excess of 40 per week.

13

91.     As a result of Defendants' acts, all six Plaintiffs suffered damages and are entitled to (i) unpaid wages from Defendants for overtime work for which they did not receive pay, as required by Section 7(a) of the FLSA, 29 U.S.C. § 207(a); (ii) liquidated damages pursuant to Section 16(b), 29 U.S.C. § 216(b); and (iii) reasonable attorney fees, and costs and disbursements of this action, *id.*

92.     Section 16(b) of the FLSA, 29 U.S.C. § 216(b), permits Plaintiffs to maintain an FLSA overtime pay action in this Court.

**Count II – D.C. Minimum Wage Revision Act**
(Plaintiffs Reidel Garcia, Alexis Alvarado, Yerli Urbina, Roberto Alvelo,
Henry Palma and Edil Palma)

93.     Plaintiffs reallege and incorporate herein as if fully restated, the allegations contained in paragraphs 1-84.

94.     Defendants were and are employers within the meaning of the D.C. Minimum Wage Revision Act, D.C. Code § 32-1002(3), and are subject to the provisions of that Act.

95.     Plaintiffs Garcia, Alvarado, Urbina, Alvelo, Henry Palma and Edil Palma at all relevant times were employees of Defendants within the meaning of the D.C. Minimum Wage Revision Act, D.C. Code § 32-1002(2).

96.     Defendants employed Plaintiffs Garcia, Alvarado, Urbina, Alvelo, Henry Palma and Edil Palma at all relevant times in the District of Columbia within the meaning of the D.C. Minimum Wage Revision Act, D.C. Code § 32-1002(1).

97.     At all times relevant, Defendants Igloo and Flores have knowingly and willfully violated the D.C. Minimum Wage Revision Act, D.C. Code § 32-1003(c), by employing Plaintiffs for workweeks longer than 40 hours without compensating them for their employment in excess of

40 hours at rates not less than one and one-half times the regular rates at which they were employed.

98.    Specifically, throughout their employment with Defendant Igloo, all six Plaintiffs were required to work 57-hours per week, and Defendants never paid Plaintiffs overtime pay for hours worked in excess of 40 per week.

99.    As a result of Defendants' acts, all six Plaintiffs suffered damages and are entitled to (i) unpaid wages from Defendants for overtime work for which they did not receive pay, as required by D.C. Code § 32-1003(c); (ii) liquidated damages pursuant to D.C. Code § 32-1012(a); and (iii) reasonable attorney fees and costs pursuant to D.C. Code § 32-1012(c).

<u>**Count III – D.C. Wage Payment and Wage Collection Act**</u>
(Plaintiffs Reidel Garcia, Alexis Alvarado, Yerli Urbina and Roberto Alvelo)

100.    Plaintiffs reallege and incorporate herein as if fully restated, the allegations contained in paragraphs 1-84.

101.    The D.C. Wage Payment and Wage Collection Act, D.C. Code § 32-1303(2), provides that when an employee voluntarily quits or resigns, the employer must pay the employee all wages due on the next regular payday or within seven days from the date of quitting or resigning, whichever is earlier.  Defendants Igloo and Flores have violated this law as to Plaintiffs Garcia, Alvarado, Urbina and Alvelo.

102.    Defendants were and are employers within the meaning of the D.C. Wage Payment and Wage Collection Act, D.C. Code § 32-1301(1), and are subject to the provisions of that Act.

103.    Plaintiffs Garcia, Alvarado, Urbina and Alvelo at all relevant times were employees of Defendants within the meaning of the D.C. Wage Payment and Wage Collection Act, D.C. Code § 32-1301(2).

104.    In or about April 2014, Plaintiff Reidel Garcia quit his employment with Defendant Igloo, and he has not received his last two paychecks from Defendants for his work on the 2M Street building or compensation from Defendants for the installation of some or all of the condenser units in the 2M Street building.

105.    In or about April 2014, Plaintiff Alexis Alvarado quit his employment with Defendant Igloo, and he has not received compensation from Defendants for the installation of eight condenser units in the 2M Street building.

106.    In or about February 2014, Plaintiff Yerli Urbina quit his employment with Defendant Igloo, and he has not received his last two paychecks from Defendants for his work on the 2M Street building.

107.    In or about January 2014, Plaintiff Roberto Alvelo quit his employment with Defendant Igloo, in part, because Defendant Flores refused to provide him with a new paycheck to replace an earlier check that had bounced.

108.    As a result of Defendants' actions, Plaintiffs Garcia, Alvarado, Urbina and Alvelo have suffered damages and are entitled to the wages owed, as well as liquidated damages equal to the lesser of (a) 10% of the unpaid wages for each work day the wages due remain unpaid, or (b) an amount equal to treble the unpaid wages owed, D.C. Code § 32-1303(4). These same Plaintiffs are also entitled to reasonable attorney fees and costs pursuant to D.C. Code § 32-1308(b).

### Count IV – D.C. Wage Theft Prevention Act of 2013
(Plaintiffs Reidel Garcia, Alexis Alvarado, Yerli Urbina, Roberto Alvelo,
Henry Palma and Edil Palma)

109.    Plaintiffs reallege and incorporate herein as if fully restated, the allegations contained in paragraphs 1-84 and paragraphs 99-102.

110.   The D.C. Wage Theft Prevention Act of 2013 amended the D.C. Wage Payment and Wage Collection Act, D.C. Code § 32-1301 *et seq.* – the law that, among other things, requires employers to pay their employees all earned and promised wages – by providing that the term "wages" includes "remuneration promised or owed" "[p]ursuant to a contract between an employer and another person or entity" or "[p]ursuant to District or federal law." D.C. Code § 32-1301(3)(E).

111.   The Davis-Bacon Act, 40 U.S.C. § 3141 *et seq.*, which applies to the 2M Street project pursuant to Section 212 of the National Housing Act, 12 U.S.C. §1715c, mandates that every contract or subcontract for a DBA-covered project, such as Defendant Igloo's contract to install HVAC systems in the 2M Street building, shall contain a provision stating the prevailing wages to be paid the various classes of laborers and mechanics, 40 U.S.C. §§ 3142 (a)-(c).

112.   Thus, "[p]ursuant to . . . federal law," D.C. Code § 32-1301(3)(E), and "[p]ursuant to [Igloo's] contract [with] another person or entity," i.e., the general contractor, a subcontractor or a project manager of 2M Street, *id.*, Defendants had an obligation to pay Plaintiffs the locally prevailing wage rate as determined by the U.S. Department of Labor for their work on the 2M Street building.

113.   By requiring each Plaintiff to kick back a portion of his earrings each pay period, Defendants failed to provide Plaintiffs the federal prevailing wage rate as required by federal law and Defendants' construction contract with the general contractor, a subcontractor or a project manager of the 2M Street project.  Accordingly, Plaintiffs are entitled to recover the earnings they were forced to turn over to Defendant Flores, as well as liquidated damages, and reasonable attorney's fees and costs pursuant to D.C. Code §32-1308 (b).

114.    Unlike the other five Plaintiffs, Reidel Garcia's earnings were below the prevailing wage rate even before making the required kickback payments to Defendant Flores.   Accordingly, Garcia is entitled to recover the kickbacks as well as the difference between the amounts he was paid and the applicable prevailing wage rate.   Plaintiff Garcia is also entitled to liquidated damages, reasonable attorney's fees and costs pursuant to D.C. Code §32-1308 (b).

### Count V – Tort of Conversion
(Plaintiffs Reidel Garcia, Alexis Alvarado, Yerli Urbina, Roberto Alvelo,
Henry Palma and Edil Palma)

115.    Plaintiffs reallege and incorporate herein as if fully restated, the allegations contained in paragraphs 1-84.

116.    Conversion is a tort by which the Defendant deprives the Plaintiff of his right to a chattel or interferes with the Plaintiff's use or possession of a chattel without lawful justification. Money may be the subject of conversion.  Defendants are liable to all six Plaintiffs on the tort of conversion.

117.    Plaintiffs had a possessory right to their earnings for work performed on the 2M Street project.

118.    Defendants unlawfully converted these earnings to their own use by forcing each Plaintiff to kick back a portion of his earnings each pay period.

119.    Plaintiffs suffered damages as a result of Defendants' wrongful acts, and Plaintiffs are entitled to recover the earnings they were forced to turn over to Defendants, as well as punitive damages in an amount to be determined.

### Count VI – D.C. Uniform Commercial Code
(Plaintiff Roberto Alvelo)

120.    Plaintiffs reallege and incorporate herein as if fully restated, the allegations contained in paragraphs 1-84.

121.    The D.C. Uniform Commercial Code provides that the holder of a negotiable instrument, such as a check, may sue the maker of the instrument to enforce payment.  D.C. Code §§ 28:3-118, 28:3-301; *see also* § 28:1-305.

122.    In or about November 2013, Plaintiff Roberto Alvelo attempted to deposit his paycheck from Defendant Igloo.  The bank refused to honor his check because there were not sufficient funds available in the account on which the instrument had been drawn.

123.    Accordingly, Plaintiff Alvelo is entitled to recover the amount due under the bounced check pursuant to D.C. Code §§ 28:3-118, 28:3-301, and any additional amounts over and above the face value of the check permitted under the Uniform Commercial Code, *see* D.C. Code § 28:1-305.

### Jury Demand

Plaintiffs hereby request a trial by jury.

### Prayer for Relief

Plaintiffs request the following relief:

1.    A declaratory judgment that Defendants Igloo and Flores' actions, omissions, and practices violate the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, the D.C. Minimum Wage Revision Act, D.C. Code § 32-1001 *et seq.*, the D.C. Wage Payment and Wage Collection Act, D.C. Code § 32-1301 *et seq.*, the D.C. Wage Theft Prevention Act of 2013, B20-0199 (codified in scattered sections of the D.C. Wage Payment Act, D.C. Code § 32-1301 *et seq.*), the D.C. Uniform Commercial Code, and that Defendant Flores is additionally liable on the tort of conversion.

2.    Damages in excess of $5,000.00, including all wages owed to Plaintiffs by Defendants for Plaintiffs' work on the 2M Street project in such an amount as this Court may determine;

3.    Liquidated damages to the fullest extent permitted under the law;

4.    Litigation costs, expenses and attorneys' fees to the fullest extent permitted under the law;

5.    Punitive damages against Defendant Flores on the tort of conversion in such an amount as this Court may determine;

6.    Interest on all of the forgoing at the legal rate from the date of judgment until payment in full; and

7.    Such other relief as this Court deems just and proper.


Dated: July 18, 2014

Robert D. Kurnick (Bar No.243683)
Lucas R. Aubrey (Bar No. 982849)
Esmeralda Aguilar (Bar No. 1003600)
Sherman, Dunn, Cohen, Leifer & Yellig, P.C.
900 Seventh Street, N.W.
Suite 1000
Washington, D.C. 20001
Telephone No. (202) 785-9300
Fax No. (202) 775-1950
E-Mail: Kurnick@shermandunn.com
E-Mail: Aubrey@shermandunn.com
E-Mail: Aguilar@shermandunn.com

*Attorneys for Plaintiffs*